State of New York ex rel. Edelweiss Fund, LLC v JP Morgan Chase & Co. (2020 NY Slip Op 08019)





State of New York ex rel. Edelweiss Fund, LLC v JP Morgan Chase & Co.


2020 NY Slip Op 08019


Decided on December 29, 2020


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 29, 2020

Before: Manzanet-Daniels, J.P., Mazzarelli, Gesmer, Moulton, Shulman, JJ. 


Index No. 100559/14 Appeal No. 12606 Case No. 2020-02539 

[*1]State of New York ex rel. Edelweiss Fund, LLC, Plaintiff-Respondent,
v
JP Morgan Chase & Co. et al., Defendants-Appellants. Wells Fargo & Company et al., Defendants.


Greenberg Traurig, LLP, New York (Hal S. Shaftel, Holly Harrison and David Gavin Jorgensen of the bar of the State of Illinois, admitted pro hac vice, of counsel) for JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., and J.P. Morgan Securities LLC, appellants.
Hodgson Russ LLP, Buffalo (Aaron M. Saykin of counsel), for M&T Bank Corporation and M&T Bank, appellants.
Wilmer Cutler Pickering Hale and Dorr LLP, New York (Megan Barriger of the bar of the Commonwealth of Massachusetts and Jonathan G. Cedarbaum of the bar of the District of Columbia and the State of Maryland, admitted pro hac vice, of counsel), for Bank of America Corporation, Bank of America N.A., Merrill Lynch, Pierce, Fenner & Smith Inc., and BofA Merrill Lynch Asset Holdings, Inc., appellants.
Sidley Austin LLP, New York (Joan M. Loughnane and David S. Kanter of counsel), for Morgan Stanley, Morgan Stanley Smith Barney LLC, Morgan Stanley & Co. LLC, Morgan Stanley Bank N.A., Morgan Stanley Capital Services, Inc., and Morgan Stanley Capital Group Inc., appellants.
Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York (Susanna M. Buergel and Kannon K. Shanmugam, of the bar of the District of Columbia, the State of Kansas and the State of Virginia, admitted pro hac vice, of counsel), for Citigroup Inc., Citibank, N.A., Citigroup Global Markets, Inc., Citigroup Financial Products, Inc., and Citigroup Global Markets Holdings Inc., appellants.
Constantine Cannon, LLP, New York (Grant Petrosyan of counsel, and David Golden and Seth Greenstein of the bar of the District of Columbia, and Saidah Grimes of the bar of the State of Maryland, admitted pro hac vice, of counsel), for respondent.



Order, Supreme Court, New York County (Andrew Borrok, J.), entered March 30, 2020, which denied defendants' motions to dismiss the complaint pursuant to CPLR 3016(b), 3211(a)(1) and (7), and State Finance Law § 187, unanimously affirmed, without costs.
To state a claim under the New York False Claims Act (NYFCA), found at sections 187-194 of chapter 56, article XIII of the State Finance Law (SFL), the relator in this quitam action must allege facts showing that defendants knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the state or local government (SFL 189[1][g]). SFL 192(1-a) provides that, for purposes of applying CPLR 3016, a "qui tam plaintiff shall not be required to identify specific claims that result from an alleged course of misconduct, or any specific records or statements used, if the facts alleged in the complaint, if ultimately proven true, would provide a reasonable indication that one or more violations [] are likely to have occurred, and if the allegations [] provide adequate notice of the specific nature of the alleged misconduct to permit the state or a local government [to investigate and defendants to defend]."
The matters that defendants characterize as pleading deficiencies are in the realm of "specific claims" or "specific records or statements" that qui tam plaintiffs suing under NYFCA are not required to plead. They argue that relator has not identified a "single interest rate that was artificially inflated" or a "single false representation" as to any particular variable rate demand obligations (VRDO), but the motion court properly found that what relator did allege, if proven true, "would provide a reasonable indication" (quoting SFL 192[1-a]) that NYFCA was violated.
Defendants argue that relator's "entire claim" is based on its conclusion that they "engaged in 'robo-resetting,'" but the claim goes further, alleging that such "robo-resetting" was wrongly used, as relator claims that its application resulted in the rates on VRDOs of disparate characteristics moving together. Defendants argue that no document required them to determine an objective lowest possible interest rate and that instead they were free to use their judgment and discretion, but relator adequately alleged that they failed to exercise such judgment. Rather than accord separate treatment to each bond subseries, they are alleged to have bucketed VRDOs and treated them identically, sometimes for years, and without apparent economic justification, given the disparate characteristics of the VRDOs.
Nor did relator simply assert in conclusory fashion that the bucketed bonds were dissimilar, but rather itemized the factors that made them so, for example, differences between the issuing State, relevant industry, purpose of the financing, and size of the debt. Defendants argue that the fact that interest rates might change in lockstep does not necessarily result [*2]in inflated rates, but relator's allegations that defendants' practices did result in inflated rates are supported by allegations based on its comparison of VRDOs to seven-day nonfinancial commercial paper.
Defendants take aim at that comparison, but their arguments are unavailing. They home in, for instance, on relator's use of the words "rose above" to describe VRDOs' rates relative to the commercial paper's, pointing out that, instead, neither type of securities' rates "rose" at all, but instead suffered a decline over the period in question. However, their argument misses the point that despite declining rates as to both, the VRDO rates were nevertheless higher than the commercial paper rates, an allegedly marked departure from historical trends. To the extent defendants raise arguments as to the inaptness of the analogy between the commercial paper and VRDOs in the first instance, those arguments are not suitable for determination on a motion to dismiss.
Scienter and materiality are adequately pleaded. Given the nature of the alleged misrepresentations and the underlying facts, defendants would have been aware of their own failures to individually assess each VRDO and aware that they were instead treating them in buckets, collectively. Given the State's interest in keeping interest rates as low as possible, the complaint adequately alleges that the misrepresentations at issue, concerning defendants' exercise of their judgment and discretion to set rates as low as possible consistent with what the market would bear, would have been material here.
For purposes of this motion to dismiss, relator adequately alleges conspiracy. It was required to allege (1) that defendants conspired with each other to get a false or fraudulent claim allowed or paid by the government; and (2) that one or more of them performed any act to effect the object of the conspiracy (see United States ex rel. Grubea v Rosicki, Rosicki & Assoc., P.C. , 318 F Supp 3d 680, 705 [SD NY 2018]). The complaint meets this standard, as it adequately alleges facts to show that defendants set rates together, facts alleging "cross-bank" buckets, facts to show defendants' aligned incentives, and facts showing how their ability to coordinate would have been facilitated by their interrelationships across VRDO transactions.
We also affirm the denial of the motions to dismiss relator's claim to the extent it arises from the conduit VRDOs. Defendants have not shown, as a matter of law, that the state or local governments provided no portion of funds requested or demanded by defendants in connection with these VRDOs (see SFL § 188), notwithstanding that, as a general matter, a private company is often a conduit borrower.
False claims are actionable if the State provides any portion of the funds used to pay the false claims (see Grubea , 318 F Supp 3d at 705-706 [rejecting the argument that false claims submitted to Fannie Mae and Freddie Mac were not "claims" under federal False Claims Act [*3]because Fannie Mae and Freddie Mac were independent for-profit companies, noting that the act "applies as long as any portion of the claim is or will be funded by U.S. money"]).
The complaint sufficiently alleges that a portion of the funds the conduit borrower received came from the state. That the state's money passed to defendant M&T Bank Corporation through private VRDO borrower entities does not make the government any less its source. By issuing conduit bonds, the state "made the funds available," thereby "providing" money within the meaning of the New York False Claims Act (see United States ex rel. Health v Wisconsin Bell, Inc ., 111 F Supp 3d 923, 926-927 [ED Wis 2015] [FCC "provided" money by mandating that common carriers pay into telecommunications services fund out of which subsidies were paid; "the government provided the money at issue in th[e] case despite the fact that the money (wa)s held in a private fund and administered by a private company"]).[FN1]
The court's determination that government funds may have been implicated in the conduit VRDO transactions at issue here, and, in turn, that dismissal at the pleading stage was not appropriate, was not a matter of mere speculation, as defendants contend, but instead a reasonable reading of relevant documents furnished, and assertions made, by M&T itself on its motion to dismiss. A sample loan agreement in which M&T served as a letter of credit provider stated that, upon issuance of the bonds at issue there, the "issuer," Town of Colonie Local Development Corp., "shall lend the proceeds thereof" (emphasis added) to the private nonprofit company involved in that transaction, Shaker Pointe at Carondelet, Inc., for certain purposes. Even more broadly, M&T, in its motion papers, acknowledged that, under conduit VRDOs, a "government entity issues the bonds, and then loans the proceeds from the bond issuance to the private entity for the private entity's project." Given the possible involvement of government funds in these financing transactions, the court appropriately declined to dismiss the NYFCA claim (and, in turn, the conspiracy allegations as to M&T) as to the conduit VRDOs at the pleading stage.
We have considered defendants' remaining arguments and find them unavailing.THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: December 29, 2020



Footnotes

Footnote 1: Matter of Erie County Indus. Dev. Agency v Roberts (94 AD2d 532 [4th Dept 1983]), relied on by defendants, is distinguishable. Erie was not an NYFCA case but a prevailing wage case under the Labor Law and involved interpretation of the phrase "public work," which was used but not defined in that statute.